IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **STACY DOBBS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-00215 |
| | § | |
| **INV PERFORMANCE SURFACES, LLC** | § | JURY TRIAL |
| **D/B/A INVISTA S A R L,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Stacy Dobbs (referred to as "Plaintiff" or "Dobbs") brings this gender and age discrimination lawsuit against INV Performance Surfaces, LLC d/b/a INVISTA S A R L ("INVISTA") a KOCH company, under both Federal Question and Diversity 28 U.S.C. § 1331, 28 U.S.C. § 1332. In support thereof, would respectfully show the Court as follows:

## I.
## PARTIES

1. Plaintiff Stacy Dobbs is an individual who resides in Montgomery County and who was a former employee of Defendant.

2. Defendant INV Performance Surfaces, LLC d/b/a INVISTA S A R L ("INVISTA") a KOCH's company is a Delaware corporation doing business in Texas and may be served through its registered agent, United Agent Group Inc., 5444 Westheimer, #1000, Houston, TX 77056 or wherever it may be found.

1

## II.
## VENUE AND JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331 federal question jurisdiction and pursuant to diversity jurisdiction under 28 U.S.C. § 1332, because the amount in controversy is in excess of $75,000.

3. Venue is proper in Southern District of Texas because Plaintiff worked for Defendant in Harris County.

## III.
## FACTS

4. Dobbs was discriminated against based on age and gender and retaliated against by her young male supervisors Mike Esposito and Shae Hinman for complaints made to her supervisor and HR.

**A. Dobbs was an Exemplary Employee**

5. Dobbs was employed by INVISTA for approximately 6.5 years from March 2015 to September 3, 2021. Dobbs was a Senior Antron® Business Development Manager at the time of her termination in charge of Invista's Antron® Fiber's single largest customer whom she was responsible for nationally.

6. Dobbs was an exceptional employee who took pride in her job as well as her strong work ethics. Dobbs had no prior history of negative reviews or feedback prior to her discrimination.

7. Dobbs received strong performance reviews in 2016, 2017, 2018 and 2019, a promotion, and a raise all while working under at least five different supervisors, including Denise Silbert, Dobbs' supervisor prior to Mike Esposito (a younger male in his 30's) replacing

Silbert. In addition to Dobbs' outstanding performance, she also received stellar reviews by her co-workers and customers during these years.

8. In fact, Dobbs was a top-notch employee providing excellent service and performance before her path crossed with young, male supervisors Mike Esposito (in his 30's) and Shae Hinman (in his 20's).

**B. Defendant has a history of hiring and promoting younger employees, mostly male**

9. Dobbs' prior supervisor Denise Silbert (a seasoned female manager) was forced to leave the company after Esposito and the VP at the time, restructured roles and Silbert was left without a role eliminating her leadership position all the while promoting Esposito (a younger male in his 30's).

10. Dobbs was demoted from her supervisor position and team lead for North America. Shae Hinman was given her role as field team supervisor for North America managing Dobbs and another female over 45.

11. Shae Hinman (a younger male in his 20's), with no prior supervisor experience was promoted to Dobbs' supervisor managing seasoned female employees with over 25 years' experience.

12. Dobbs was demoted from her supervisor position while Shae Hinman was promoted to supervisor position.

13. Esposito (in his 30's) was promoted and now supervising Hinman (in his 20's).

14. Around the same time, Dustin Abrahams, Human Resource (another young male) was promoted replaced Deann Haist (a seasoned female manager in Human Resource).

15. Defendant has a history of hiring and promoting younger employees, mostly male.

### C. Dobbs endured Discrimination and Harassment at the hands of Mike Esposito and Shae Hinman

16. Both Esposito and Hinman continued to discriminate and retaliate against Dobbs until she was finally terminated.

17. In September of 2020, Dobbs filed a complaint with Supervisor Esposito and HR regarding an incident that she felt was a violation of company policies. She complained about how Esposito handled the investigation and the outcome.

18. Dobbs was requested to participate in a public review of young supervisor Esposito. She notified Brook Brown that she feared retaliation if she participated in the public forum and sensitive subject matter on Esposito. In return, she was retaliated against anyway.

19. Despite having strong performance reviews in 2016, 2017, 2018 and 2019, a promotion, a raise and stellar reviews by her customers, Esposito and Hinman contrarily, marked Dobbs with poor reviews on her 2020 review summary.

20. On December 3, 2020, Hinman and Esposito humiliated and disrespected Dobbs in a live video performance review. Dobbs was blindsided by her 2020 review summary delivered by Hinman and Esposito. It was disrespectful and intentionally done on the sole purpose of retaliation. Hinman read Dobbs' own self-assessment word-for-word using it against her. And then told her "pulling HR into the situation caused more churn than necessary", clearly in retaliation for filing a complaint with HR. Further, Dobbs was told she was not aligned with their culture, lacked trust, humility and sharing skills. Dobbs was left feeling completely blindsided and in disbelief that they would blatantly retaliate.

21. Dobbs was not placed on a PIP, but in a good faith attempt and trying to save her job, she voluntarily created an improvement plan in order to get on her young supervisor's good

side. In addition, Dobbs complained to Supervisor Hinman that she was discriminated against and retaliated against and that her negative review was a direct retaliation for challenging the ethics of her former male supervisor Mike Esposito.

22. Discrimination and retaliation against Dobbs continued. She was removed from strategy meetings, overlooked for challenging work assignments, made to look less useful and valuable to others within the organization, left out of important decisions and isolated.

23. Hinman refused Dobbs' tuition reimbursement for her MBA through the Education Assistance Program based on feedback provided by him.

24. Dobbs was immediately demoted from her supervisor position to work on "value creation for customers" when placed under Esposito's management, while Shae Hinman was promoted to supervisor position managing seasoned female employees with over 25 years' experience.

25. On February 25, 2021, Dobb's received excellent feedback from Hinman.

26. On May 28, 2021, Dobb's requested a written mid-year feedback summary from Hinman to prevent being blindsided again like in December of 2020.

27. On June 28, 2021, Dobb's sent a second request for written mid-year feedback summary to Hinman.

28. Dobb's provided the requested external feedback contact of Amanda Darley, the Director of Marketing of Mannington Commercial to Hinman for her mid-year review.

29. On August 9, 2021, Dobb's mid-year feedback summary was delivered that she continues in misalignment with their culture after 7 months of training. (Which is false information since Dobbs only had one training session with Hinman and one team training

5

session.).   In addition, Hinman intentionally withheld positive customer feedback from Amanda Darley, Director of Marketing wherein it states, "She has experienced more value creation since Dobbs was assigned her account than in the 3.5 years prior."  (Hinman and Esposito managed the account prior to Dobbs.)   She explicitly shared that "Dobbs was a strong communicator, generous knowledge sharer, honest, reliable, and authentic". She even shared "she believes that making Dobbs their single point of contact would grow Invista business and strengthen the relationship further". She concluded by questioning Hinman on what was going on with our Invista culture. (*See*, Ex.1).

30. Hinman intentionally withheld positive customer feedback from Human Resource and Dobbs just 1 week prior to her performance review of not meeting performance needs.

31. On August 9, 2021, Dobbs notified Dustin Abrahams, Human Resource (another young male who was promoted and who replaced Deann Haist (a seasoned female manager in Human Resource) that she had been discriminated against and retaliated against since third quarter 2020 and did not feel safe in the workplace.

32. On August 10, 2021, Dobbs sent a request to Dustin Abrahams, Human Resource requesting to be assigned to another supervisor as Hinman did not treat her with fairness and she feared more retaliation after the filing of the discrimination and retaliation complaint against Esposito and Hinman.

33. On August 11, 2021, Dobbs filed a discrimination and retaliation complaint with Human Resource against Esposito and Hinman.

34. On August 16, 2021, Dustin Abrahams, Human Resource informed Dobbs that her request for a new supervisor was on hold.

35. On August 17, 2021, Dobbs was interviewed by INVISTA/KOCH Counsel, Rachel Richard and also provided counsel a copy of the complaint.

36. On September 1, 2021, Dobbs' discrimination complaint was closed with no findings.

37. On September 3, 2021, barely a month after Dobbs filed the discrimination complaint with Human Resource, Dobbs was terminated.

38. Dobbs once again reported her discrimination and retaliation to Defendant, this time by means of KOCH's automated service.

39. On September 8, 2021, Dobbs' Complaint via KOCH's automated service was closed with no explanation.

40. Defendant discriminated against Dobbs because of her age and gender and retaliated against her for complaints related to discrimination in violation of Title VII.

41. Dobbs suffered mental anguish damages, due to the pain and stress intentionally inflicted upon her, the discrimination, harassment, retaliation, hostile work environment, loss of income, loss of employment and the financial burden of not being able to provide for her family. Dobbs sought medical attention related to her mental health. She had to proactively file for covid/economy relief due to unemployment from her mortgage company.

## IV.
## CAUSES OF ACTION:

### COUNTS ONE & TWO
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

42. Plaintiff incorporates the prior allegations in her petition as if stated herein. Plaintiff believes Defendant discriminated against and retaliated against her in violation of Title

VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act because of her gender and age and due to her complaints based on gender and age. Dobbs was a top-notch employee with strong performance reviews in 2016, 2017, 2018 and 2019, a promotion, a raise and stellar reviews by her customers until she was assigned to work under Shae Hinman, a young male with no prior supervisor experience and Esposito another young male who was promoted and supervised Hinman.  Both of which made a hostile work environment for Dobbs.  They humiliated her, removed her from strategy meetings, overlooked her for challenging work assignments, made her look less useful and valuable to others within the organization, left her out of important decisions and isolated her. Hinman harassed Dobb's by initially refusing to pay her reimbursement fees for her MBA through the Education Assistance Program.  Despite having strong performance reviews in 2016, 2017, 2018 and 2019, a promotion, a raise and stellar reviews by her customers, Esposito and Hinman contrarily, marked Dobbs with poor reviews on her 2020 review summary which ultimately led to her termination. Dobbs tried desperately to save her employment, and even requested to be transferred to another division within the Koch's companies, but Hinman declined Dobbs' request to transfer.   Dobb's reported the discrimination to HR repeatedly, and was terminated soon thereafter.

43.     Dobbs would eventually go to work for Invista's Antron® Fiber's single largest customer whom she was responsible for nationally at the time she was terminated which is quite ironic if she in fact had such poor performance.

**COUNT THREE**
**AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)**

44.     Plaintiff incorporates the prior allegations in her petition as if stated herein. Plaintiff believes Defendant discriminated against and retaliated against her in violation of the

8

Age Discrimination in Employment Act because of her age (over 40) and due to her complaints based on age.

## V.
## DAMAGES

45. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages under Title VII of the Civil Rights Act of 1964, TCHRA and ADEA.

46. Defendant's conduct was willful under the ADEA and the Defendant either (1) knew its conduct violated the ADEA or (2) acted with reckless disregard for compliance with the ADEA. Plaintiff is entitled to liquidated damages under the law.

## VI.
## EXEMPLARY DAMGES

47. Dobbs is seeking exemplary damages against the Defendant because the Defendant's conduct was malicious and/or the Defendant acted with reckless indifference to her rights.

## VII.
## ATTORNEYS' FEES

48. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer damages including, but not limited to, mental anguish, lost wages, and lost earning capacity.  Defendant's wrongful conduct has made it necessary for Plaintiff to retain the undersigned attorneys to represent her in bringing and prosecuting this action, and, if necessary, for legal representation on appeal.  Plaintiff therefore seeks recovery of all reasonable attorneys' fees and costs.

## VIII.
## **JURY DEMAND**

49. Plaintiff hereby makes a demand for a jury to hear and determine all issues of fact in this case.

## IX.
## **PRAYER**

50. Plaintiff prays that Defendants be cited to appear and answer in this suit and that, upon final trial, she be awarded all damages allowed by law, including back pay, front pay, liquidated damages, mental anguish damages, punitive damages, attorneys' fees, costs of court, pre- and post-judgment interest at the maximum lawful rate, and all other relief to which she may be entitled.

Respectfully submitted,

/s/ *Hessam Parzivand*
**Hessam Parzivand**
Texas Bar No. 24071157
**THE PARZIVAND LAW FIRM, PLLC**
10701 Corporate Dr., Suite 185
Sugar Land, Texas 77477
T: [713] 533-8171 / F: [713] 533-8193
hp@parzfirm.com
**ATTORNEY FOR PLAINTIFF
STACY DOBBS**